County Court, Steuben County, August, 1904. Unreported.

In the Matter of the Petition of HIRAM ELLIS, for an Order Revoking and Cancelling Liquor Tax Certificate No. 9,998, Issued to PEARL FOSTER.

THIS is an application for the revocation and cancellation of liquor tax certificate issued to Pearl Foster, of Arkport, N. Y., by the treasurer of Steuben county.

*Orcutt, Robbins & Brown,* for the petitioner.

*James H. Clancy,* for the defendant.

CLARK, Co. J.:—This application is made on the ground that the material statements made by the defendant in his application for a liquor tax certificate were false.

The evidence taken on the hearing in this matter shows that one Fred J. Phillips, in the early part of the winter of 1903, made an application to the treasurer of Steuben county for a liquor tax certificate, and had attached thereto the consents of two dwelling-house owners.

That in April, 1903, another application was made by the said Fred J. Phillips, for a liquor tax certificate, which was duly issued

to him; and in April, 1904, the defendant, Pearl Foster, made application to the treasurer of Steuben county for a liquor tax certificate, but that no consents of dwelling house owners were ever filed by the defendant, except the two consents originally filed by Phillips in January, 1903, when a liquor tax certificate was first issued to him.

It is conceded that the hotel of the defendant, in the village of Arkport, is located within two hundred feet of four buildings, three of which are, and were at the time of the filing of defendant's application, used exclusively as dwellings, and the only question to be decided here is whether or not the fourth dwelling referred to, occupied by Newton Colegrove and family, was used exclusively as a dwelling. If it was not, but was used as a public boarding house, as claimed by the defendant, then the two consents referred to in the defendant's application for his liquor tax certificate, would be sufficient, for he would then have the consents of two-thirds of the dwelling-house owners within two hundred feet of his hotel, as required by subdivision 8 of section 17 of the Liquor Tax Law.

If, on the other hand, the house occupied by Mr. Colegrove and his family was used and occupied exclusively as a dwelling-house then the defendant did not obtain and file the proper consents as required by law, and the contention of the petitioner would have to be upheld.

The evidence taken on the hearing shows that Mr. Colegrove and his family had occupied the premises in Arkport, now occupied by them, as a family residence for nearly 25 years. During that time they had occasionally taken a boarder, and for a short period two gentlemen boarded at their house, but the evidence is clear and undisputed that they had no sign on their premises indicating to the public that theirs was a boarding house; and it is equally clearly established by the evidence that they never, at any time kept a public boarding house, as that term is commonly understood. They did not prepare meals and serve them to transient customers, did not make it their business to keep boarders, excepting occasionally and in the manner above indicated, and when they did it would appear from the evidence that the taking of the boarders was more in the nature of an accommodation to neighbors and friends than the carrying on of the business of keeping boarders.

The courts have passed upon questions similar to this, and there

can be no mistaking the fact that a nice rule in attempting to establish the fact that a man keeps a public boarding house, because he happens to take an occasional boarder in his family, has not been encouraged.

The mere fact that a family occasionally takes in a boarder would not deprive the residence of its character as a dwelling house.

A public boarding house is a place where the general public would be invited to enter and receive accommodation, and the evidence fails to disclose a single element in this case even tending to show that Mr. Colegrove kept, or ever kept, a public boarding house.

It certainly was not the intention of the Legislature that a person's private residence shall lose its character as a dwelling house, used exclusively as such, because the owner occasionally took in a boarder. That idea would be neither sensible nor reasonable.

In the *Matter of Lyman,* (26 Misc. 568), the court says:

"It seems to me the provisions of the statute in question mean a building, all of which considered as a whole, in its general and preponderating use, is designed for and devoted to occupation as a dwelling, as a dwelling of its kind would be ordinarily used, and to the exclusion of any distinct portion thereof being openly and habitually devoted to some other purpose, as that of business."

And again, in the *Matter of Veeder* (31 Misc. 569), the court says: " The fact that one or more of his (the property owner's) rooms were let for occupancy for persons other than members of his family would not deprive his house of its character as a dwelling house."

These two cases seem to be right in point, and it is hardly necessary to cite others, for they must be controlling.

To say that because a man, living with his wife and family, occupying a house not designated or indicated as a boarding house by any sign where boarders had never been solicited, but where the family had occasionally taken in a boarder, to say that such a house was not occupied exclusively as a dwelling, but was in fact a public boarding house, would be to strain the common understanding of what a boarding house is, beyond the limits of common sense.

From the evidence in this case, I am very clearly of the opinion

that Mr. Colegrove's residence was, at the time the defendant made his application for liquor tax certificate, and now is, and has been for many years, occupied exclusively as a dwelling house, and that the defendant was clearly mistaken in his assumption that it was a public boarding house.

It being conceded that the defendant only had the consents of two dwelling householders, whereas he should have had three, for Mr. Colegrove's residencet was a dwelling house within the meaning of the statute, and used exclusively as such, it follows that the defendant did not have the requisite number of consents to entitle him to a liquor tax certificate, and that the prayer of the petitioner must be granted, and that the liquor tax certificate issued to the defendant must be revoked and cancelled, with $25.00 costs to the petitioner, besides disbursements, to be duly taxed.

Let an order be entered accordingly.